**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREENWOOD LAND COMPANY, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 09-686 |
| | ) | Judge David Stewart Cercone/ |
| OMNICARE, INC.; NCS HEALTHCARE | ) | Magistrate Judge Amy Reynolds Hay |
| OF NEW YORK, INC., | ) | |
| Defendants | ) | |

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

The Amended Complaint (Doc. 3) in this diversity matter filed by Greenwood Land

Company ("Greenwood") comprises three counts - the first for breach of a commercial lease, the

second alleging negligence based on failure to maintain and repair the leased premises, and the

third for punitive damages.  The Defendants, Omnicare, Inc. ("Omnicare") and NCS Healthcare of

New York, Inc. ("NCS"), have filed a Motion to Dismiss Counts II and III of the Amended

Complaint, contending that Count II is barred by Pennsylvania's "gist of the action" doctrine and

that, in the absence of a viable negligence claim, the Count III claim for punitive damages must be

dismissed as well.  It is respectfully recommended that the Defendants' Motion (Doc. 42) be

granted.

**II.     REPORT**

    **A.     Background**

In 1994, Greenwood, as landlord of commercial property located in Sharon, Pennsylvania,

entered into a lease ("Lease") with Thrift Drug, Inc. ("Thrift").  The Lease, which covered a term

beginning March 2, 1994, and ending April 1, 2004, included two renewal periods which were to

run from April 1, 2004 to April 1, 2009, and from April 1, 2009 to April 1, 2014.  The renewals

were automatic, meaning that the Lease continued in force unless the tenant provided notice of

intent not to renew at least six months prior to expiration of the then current term.

In late 1997 or early 1998, the assets and liabilities of Thrift were acquired by NCS and, on

January 20, 1998, Thrift assigned its tenancy under the Lease to NCS, a wholly-owned subsidiary

of NCS Healthcare, Inc.  In January 2003, Omnicare acquired NCS Healthcare, Inc., and,

according to Greenwood, became the de facto assignee of the Lease.  (Doc. 3 at ¶ 20(j)).

Greenwood alleges that the Defendants "refused to make payments for rent due under the lease

after April 1, 2009."  (Id. at ¶ 24(c)).

Although the Amended Complaint seeks damages for non-payment of rent, real estate

taxes, and insurance fees, the arguments underlying the Motion to Dismiss turn primarily on the

condition of the property at the time the Defendants' ceased paying rent.  Greenwood alleges that

the Defendants failed to care for and maintain the property as required by  the Lease, thereby

causing significant damage to the premises.  (Doc. 3 at ¶ 20(j),(c),(f),(g)).[1]  According to

_____

[1]The portion of the Lease allocating responsibility for maintenance and repairs reads:

> Landlord shall be responsible for and keep in good and tenantable
> condition, and in good order and repair (i) appurtenances thereto, (ii)
> all structural arts thereof, both exterior and interior, including but
> not limited to floor slabs, walls and roofs, and all repairs thereto
> necessary to make same watertight, (iii) all concealed water, sewer,
> gas, electric and other utility lines and all sprinkler systems, if any,
> and (iv) all mechanical equipment, including but not limited to, the
> heading and air-conditioning systems and any elevators.  Landlord's
> obligations under this article shall not extend to such repairs which
> are necessary as a direct result of the negligent acts or omissions of
> Tenant, its agents, invitees, contractors, employees, or servants, to
> the extent not covered by casualty insurance carried by Landlord or
> required to be carried by Landlord pursuant to this lease.

Greenwood, these damages, totaling at least $430,108.56, "were caused or allowed knowingly, intentionally and in wanton disregard for the health and property of others."  (Id. at ¶¶ 26, 29(c)).

### B.   Standard of Review

In ruling on a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 95 (2007).  A complaint does not satisfy the requirements of Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (modifying longstanding 12(b)(6) standard set out in Conley v. Gibson, 355 U.S. 41 (1957)).  See also Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009) (clarifying that Twombly standard not limited to antitrust context).

To survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must "make a 'showing' rather than a blanket assertion of an entitlement to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008).  In other words, he must supply "enough facts to raise a reasonable expectation that discovery" will reveal evidence supporting his claim.  Id. at 232 (quoting Twombly, 550 U.S. at 556 n.3).  The United States Court of Appeals for the Third Circuit has instructed:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a

---

(Doc. 3 at ¶ 13).  The Lease also placed upon the tenant "responsib[ility] for repairing, resealing and/or replacing the parking areas and sidewalks when needed." (Id. at ¶ 14).

> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief." In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief. A complaint has to "show"
> such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Where the court is unable to

infer more than a possibility of misconduct, the complaint does not "show" that the pleader

is entitled to relief.

**C.**     **Discussion**

      **1.**     **The Negligence Claim and the "Gist of the Action Doctrine"**

The gist of the action doctrine serves "to maintain the conceptual distinction between

breach of contract claims and tort claims" by preventing a plaintiff from attempting to cast what is

really a breach of contract claim as a tort claim.  eToll, Inc. v. Elias/Savion Adver., Inc.,

811 A.2d 10, 14 (Pa. Super. 2002).  Pennsylvania courts have differentiated contract from tort claims as

follows: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while

contract actions lie only for breaches of duties imposed by mutual consensus agreements between

particular individuals."  Bash v. Bell Tele. Co. of Pennsylvania., 601 A.2d 825, 829 (Pa.

Super.1992).[2]

The gist of the action "doctrine bars tort claims: (1) arising solely from a contract between

the parties; (2) where the duties allegedly breached were created and grounded in the contract

---

[2]Although the Pennsylvania Supreme Court has yet to adopt the doctrine, it has been applied
regularly by the Pennsylvania Superior Court.  See, e.g., Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572,
577 (Pa. Super. 2003).  The Court of Appeals for the Third Circuit has also relied on the doctrine in
applying Pennsylvania law.  See Bohler-Uddeholm America, Inc. v. Ellwood Group., Inc., 247 F.3d 79,
103-04 (3d Cir. 2001).

itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Wilmington Trust Co. v. County of Allegheny, 640 F. Supp.2d 643, 648 (W.D. Pa. 2009) (citing eToll, 811 A.2d at 19).

To determine whether the doctrine applies, the Court must assess whether the duties alleged to have been breached are intertwined with or merely collateral to obligations under the contract. Id. (citing Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp.2d 644, 651 (W.D. Pa.1999)). Despite Greenwood's vigorous and creative arguments to the contrary, the Court finds that Count II of the Complaint, which alleges negligence on the part of the Defendants, is indisputably grounded in the Lease agreement, and should, therefore, be dismissed.

The Plaintiff first seeks to avoid application of the gist of the action doctrine by arguing that consideration of the doctrine is premature. In support of this argument, Greenwood notes that "courts have been reluctant to apply the gist of the action doctrine to dismiss tort claims where the existence of a contract is still in question." M.H. Rydek Elec., LLC v. Zober Indus., No. 07-3885, 2007 WL 3407130, at * 2 ( E.D. Pa. Nov. 15, 2007) (collecting cases). Here, however, NCS admits unequivocally that it was a successor to the original lessee, Thrift, and that it was bound by the terms of Thrift's lease with Greenwood. (Doc. 43 at 9).[3] As to NCS, application of the doctrine is not premature.[4]

---

[3]"When a [party] alleges a fact in a court of justice, for [its] advantage, [it] shall not be allowed to contradict it afterwards." Tops Apparel Mfg. Co. v. Rothman, 244 A.2d 436, 439 n.8 (Pa. 1968) (quoted in Toledo Mack Sales & Serv., Inc., v. Mack Trucks, Inc., 530 F.3d 204, 229 n.18 (3d Cir. 2008)).

[4]The prematurity argument is also insufficient to overcome dismissal of the negligence claims lodged against Omnicare. Even if the Court were to assume for purposes of the pending Motion that Omnicare was bound by the terms of the Lease, the negligence claims against it would, as the discussion with respect to NCS, infra, demonstrates, be barred by the gist of the action doctrine. Moreover, Greenwood has not set out sufficient facts to state a plausible claim that Omnicare owed it a duty separate

Greenwood next argues that NCS's concession that it was the assignee of Greenwood's lease with Thrift does not preclude Greenwood from asserting negligence claims against NCS. Greenwood cites Pennsylvania case law for the proposition that the gist of the action applies only where "the complained-of conduct [finds] *no substantial basis in the law of torts*."  (Doc. 45 at 7) (italics and underlining in original).  According to Greenwood, its claims for destruction of the leased building and premises "find ample support in the law of tort and do not arise solely from contract term [sic]."  (Id. at 8).  Greenwood directs the Court's attention to Reitmeyer v. Sprecher, 243 A.2d 395 (Pa.1968).

The Pennsylvania Supreme Court decision in Reitmeyer rejected the continued viability of a decades-old principle of Pennsylvania landlord-tenant law in favor of the approach articulated in the Restatement (Second) of Torts.  In doing so, it repudiated its prior holding in Harris v. Lewistown Trust Co., 191 A. 34 (Pa.1937), that a landlord's promise to repair, made during and following negotiation of a lease, could not support a tort claim against the landlord for failure to repair.  Citing section 357 of the Restatement (Second) of Torts, which discusses a landlord's liability in tort for personal injury incurred on leased premises, the Court in Reitmeyer found that given the unequal bargaining  position of tenants and landlords, residential leases are not negotiated at arm's length.  Therefore, where a landlord induces a tenant to execute a lease for obviously defective premises by promising to make repairs, "a duty on the part of the landlord [arises]  to repair and make safe the defective condition of the premises and if, as alleged, physical harm [is] caused to the tenant by a breach of the landlord's promise to repair," the landlord should be liable in tort.  Reitmeyer, 243 A.2d at 398.  "It is not the contract per se which creates the duty; it

and apart from any obligation it may have had under the lease.  Thus, even in the absence of any contractual obligation, the negligence claim against Omnicare cannot survive.

is the law which imposes the duty because of the nature of the undertaking in the contract." Id. (quoting Evans v. Otis Elev. Co., 168 A.2d 573, 575 ( Pa.1961)).

Greenwood also cites a second case, Reed v. Dupuis, 920 A. 2d 861, 867 (Pa. Super. 2007), which, like Reitmeyer, turns on a residential landlord's duty to his tenant.  There, the Plaintiff filed a single count complaint alleging that her landlord was negligent in failing to correct a water damage to the leased premises.  The complaint alleged that the landlord had knowledge of the condition, the condition created an unreasonable risk, and that the landlord promised to remedy the condition, but did not use reasonable care in doing so.  Id. at 866.  In response, the landlord raised the gist of the action doctrine, arguing that an exculpatory clause in the lease barred the negligence claim.

The Court in Reed rejected application of the doctrine, citing section 323 of the Restatement (Second) of Torts and section 17.6 of the Restatement (Second) of Property.  "These sections, similar to section 357 of the Restatement (Second) of Torts, imposed on a landlord an independent legal duty to exercise reasonable care when he/she undertakes to render services for a tenant and repair[s] known dangerous conditions on the leased premises."  Id. at 867.

Despite Greenwood's attempt to force this matter into the framework of the gist of the action analysis in Reitmeyer and Reed, it does not fit.  Those cases, unlike this one, dealt with extra-contractual duties imposed upon residential landlords, who are deemed to have a "special relationship" with their lessees.  The sections of the Restatements in which those duties are grounded do not have any arguable application to the maintenance obligations of a commercial tenant.  The distinction between Reitmeyer and Reed and this case is illustrated by the Court's reasoning in 2401 Walnut, L.P. v. Am. Express Travel Related Serv. Co., Civ. No. 07-1281, 2009 WL 398727 (E.D. Pa. Feb. 18, 2009).

7

There, the Defendant was alleged to have left leased premises in unsatisfactory condition. Responding to a two count complaint alleging breach of contract and negligence, the Defendant "argue[d] that plaintiff's negligence count was essentially duplicative of its breach of the lease count and [was] therefore barred under [the] 'gist of the action' . . . doctrine[ ]."  Id. at * 3.  Noting that "the . . . doctrine is to be applied with circumspection in a landlord-tenant context," the Court distinguished commercial from residential lease agreements.  "[I]n the context of a residential lease dispute, one must consider whether application of the gist-of-the-action doctrine would dilute the protections afforded to the tenant under the state's common law."  Id. at 5.  In contrast, evaluation of the obligations of a commercial tenant under a lease negotiated in an arms-length transaction, "where no 'special relationship' exists," turns on whether the "plaintiff's negligence claim is sufficiently distinct from [the] breach-of-the-lease claim as to be capable of being independently pursued."  Id. at 6.  The Court, in an analysis which is equally applicable to Greenwood's arguments, observed that the tenant's obligation under the lease to keep the premises in good order was a duty:

> "[C]reated by the larger social obligations embodied in the law of torts."  See, e.g., U.S. Gypsum Co. v. Schiavo Bros., Inc., 668 F.2d 172,174 (3d Cir.1981) ("The obligation of a tenant to return the leasehold property in the condition in which it was received, reasonable wear and tear excepted, is fundamental to the landlord-tenant relationship, even in a commercial setting.") (applying Pennsylvania law) *The legal duty is not, however, one that is "separate and distinct" from the duties that defendant assumed under the lease.* [The lease] terms subtly expound upon a tenant's duty under common law "to return the leasehold property in the condition in which it was received, reasonable wear and tear excepted." [M]odifications to the leaseholder's common law duty to repair are, of course, the parties' prerogative to bargain for. See Restatement (Second) Property: Landlord and Tenant § 12.2 cmt. l. ("The obligations assumed by the tenant . . . to keep the leased property in repair depend, of course, on the intention of the parties as manifested by the language [expressing] the promise.").

8

> Accordingly, [the] complaint alleges that defendant violated legal duties that derive from specific provisions of the commercial lease. Application of the gist-of-the-action doctrine in this context, where the lease was negotiated between sophisticated parties in an arms-length transaction, would not cause the tenant's obligation to repair to "be rendered meaningless" and would not cause "underlying social policies" not to be given effect. Reed, 920 A.2d at 867.

2401 Walnut, 2009 WL 398727, at * 6 (some internal citations omitted) (emphasis added).  The Court thus concluded that the gist of the action doctrine barred the plaintiff's negligence claim. Greenwood has failed to convince the Court that a different result should obtain here.[5]

Although Greenwood claims that NCS intentionally and negligently breached its contract with plaintiffs, the bottom line is that "it does not matter in what manner defendants committed the alleged breach; it is still simply a breach of contract, and the gist of plaintiff['s] action in this case clearly sounds in contract."  McShane v. Recordex Acquisition Corp., No. 01117 Feb. Term 2003, 070576, 2003 WL 22805233, at *4 (Pa. Com. Pl. Nov. 14, 2003).  But for the contract, the Defendants would not have been in lawful possession of the leased premises, and would not have owed any duty to the Plaintiff to maintain or repair the property.  In these circumstances, the contract is inextricably intertwined with the negligence claim, and the negligence claim should be dismissed.

### 2.        The Punitive Damages Claim

---

[5]Greenwood's citation to Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc., 530 F.3d 204 (3d Cir. 2008) does not alter the Court's conclusion.  There, the Court of Appeals considered whether a counterclaim for misappropriation of trade secrets could be construed as a claim for breach of a licensing agreement.  Concluding that it could not, the Court relied on the fact that Mack Trucks, Inc. had taken "several steps independent of issuing a license agreement to insure that its dealers did not [share information with] unauthorized persons."  Id. at 229.  "Thus, Toledo's duty did not arise simply from its license agreement with Mack, but instead had roots in its independent duty to keep Mack's trade secrets confidential, and the counterclaim can properly be seen as sounding in tort." Id.  The facts of Toledo Mack are simply not analogous to those presented here.

Under Pennsylvania law there is no independent cause of action for punitive damages.  See Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa.1989) (stating that " [s]ince punitive damages are an element of damages arising out of the initial cause of action, if that cause of action is dismissed, the punitive damages [claim] cannot stand").  Equally fundamental is the fact that punitive damages are not available in actions for breach of contract.  See Ash v. Cont'l Ins. Co., 932 A.2d 877, 881 (Pa. 2007) (observing that "under Pennsylvania law, punitive damages are typically only awarded in tort actions").  Because, as the Court has explained, Greenwood has not advanced a viable claim in tort, the claim for punitive damages should be dismissed.

## III.  **CONCLUSION**

For the reasons set out above, it is recommended that the Defendants' Motion to Dismiss Counts II and III of the Amended Complaint (Doc. 42) be granted.

Pursuant to the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.


Respectfully submitted,


/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge


cc:     Counsel of Record via CM-ECF

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GREENWOOD LAND COMPANY,     )
                       Plaintiff    )
                                  )
   vs.                          )       Civil Action No. 09-686
                                  )       Judge David Stewart Cercone/
OMNICARE, INC.; NCS HEALTHCARE   )       Magistrate Judge Amy Reynolds Hay
OF NEW YORK, INC.,             )
                    Defendants    )

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

The Amended Complaint (Doc. 3) in this diversity matter filed by Greenwood Land Company ("Greenwood") comprises three counts - the first for breach of a commercial Lease, the second alleging negligence based on failure to maintain and repair the leased premises, and the third for punitive damages.  The Defendants, Omnicare, Inc. ("Omnicare") and NCS Healthcare of New York, Inc. ("NCS"), have filed a Motion to Dismiss Counts II and III of the Amended Complaint, contending that Count II is barred by Pennsylvania's "gist of the action" doctrine, and that, in the absence of a viable negligence claim, the Count III claim for punitive damages must be dismissed as well.  It is respectfully recommended that the Defendants' Motion (Doc. 42) be granted.

### II.  REPORT

A.     **Background**

11

In 1994, Greenwood, as landlord of commercial property located in Sharon, Pennsylvania, entered into a Lease with Thrift Drug, Inc. ("Thrift").  The Lease, which covered a term beginning March 2, 1994, and ending April 1, 2004, included two renewal periods which were to run from April 1, 2004 to April 1, 2009, and from April 1, 2009 to April 1, 2014.  The renewals were automatic, meaning that the Lease continued in force unless the tenant provided notice of intent not to renew at least six months prior to expiration of the then current term.

In late 1997 or early 1998, the assets and liabilities of Thrift were acquired by NCS, and, on January 20, 1998, Thrift assigned its tenancy under the Lease to NCS, a wholly-owned subsidiary of NCS Healthcare, Inc.  In January 2003, Omnicare acquired NCS Healthcare, Inc., and, according to Greenwood, became the de facto assignee of the Lease. (Doc. 3 at ¶ 20(j)). Greenwood alleges that the Defendants "refused to make payments for rent due under the lease after April 1, 2009." (Id. at ¶ 24(c)).

Although the Amended Complaint seeks damages for non-payment of rent, real estate taxes, and insurance fees, the arguments underlying the Motion to Dismiss turn primarily on the condition of the property at the time the Defendants' ceased paying rent. Greenwood alleges that the Defendants failed to care for and maintain the property as required by  the Lease, thereby causing significant damage to the premises. (Doc. 3 at ¶ 20(j),(c),(f),(g)).[6]  According to

---

[6]The portion of the Lease allocating responsibility for maintenance and repairs reads:

> Landlord shall be responsible for and keep in good and tenantable
> condition, and in good order and repair (i) appurtenances thereto, (ii) all
> structural arts thereof, both exterior and interior, including but not limited
> to floor slabs, walls and roofs, and all repairs thereto necessary to make
> same watertight, (iii) all concealed water, sewer, gas, electric and other
> utility lines and all sprinkler systems, if any, and (iv) all mechanical
> equipment, including but not limited to, the heading and air-conditioning
> systems and any elevators.  Landlord's obligations under this article

Greenwood, these damages, totaling at least $430,108.56, "were caused or allowed knowingly, intentionally and in wanton disregard for the health and property of others." (Id. at ¶¶ 26, 29(c)).

**B.    Standard of Review**

In ruling on a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint does not satisfy the requirements of Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (modifying longstanding 12(b)(6) standard set out in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009) (clarifying that Twombly standard not limited to antitrust context).

To survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must "make a 'showing' rather than a blanket assertion of an entitlement to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008). In other words, he must supply "enough facts to raise a reasonable expectation that discovery" will reveal evidence supporting his claim. Id. at 232 (quoting Twombly, 550 U.S. at 556 n.3). The United States Court of Appeals for the Third Circuit has instructed:

---

shall not extend to such repairs which are necessary as a direct result of the negligent acts or omissions of Tenant, its agents, invitees, contractors, employees, or servants, to the extent not covered by casualty insurance carried by Landlord or required to be carried by Landlord pursuant to this lease.

(Doc. 3 at ¶ 13).  The Lease also placed upon the tenant "responsib[ility] for repairing, resealing and/or replacing the parking areas and sidewalks when needed."  (Id. at ¶ 14).

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. Second, a
> District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible
> claim for relief." In other words, a complaint must do more than
> allege the plaintiff's entitlement to relief. A complaint has to "show"
> such an entitlement with its facts.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009). Where the court is unable to

infer more than a possibility of misconduct, the complaint does not "show" that the pleader

is entitled to relief.

**C.      Discussion**

      **1.      The Negligence Claim and the "Gist of the Action Doctrine"**

The gist of the action doctrine serves "to maintain the conceptual distinction between

breach of contract claims and tort claims" by preventing a plaintiff from attempting to cast what is

really a breach of contract claim as a tort claim.  <u>eToll, Inc. v. Elias/Savion Adver., Inc.,</u> 811 A.2d

10, 14 (Pa. Super. 2002).  Pennsylvania courts have differentiated contract from tort claims as

follows: "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while

contract actions lie only for breaches of duties imposed by mutual consensus agreements between

particular individuals."  <u>Bash v. Bell Tele. Co. of Pennsylvania.,</u> 601 A.2d 825, 829 (Pa.

Super.1992).[7]

---

[7]Although the Pennsylvania Supreme Court has yet to adopt the doctrine, it has been applied
regularly by the Pennsylvania Superior Court. <u>See</u>, <u>e.g.</u>, <u>Pittsburgh Constr. Co. v. Griffith</u>, 834 A.2d 572,
577 (Pa. Super. 2003). The Court of Appeals for the Third Circuit has also relied on the doctrine in
applying Pennsylvania law.  <u>See Bohler-Uddeholm America, Inc. v. Ellwood Group., Inc.</u>, 247 F.3d 79,
103-04 (3d Cir. 2001).

The gist of the action "doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Wilmington Trust Co. v. County of Allegheny, 640 F. Supp.2d 643, 648 (W.D. Pa. 2009)  (citing eToll, 811 A.2d at 19).

To determine whether the doctrine applies, the Court must assess whether the duties alleged to have been breached are intertwined with or merely collateral to obligations under the contract. Id.  (citing Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp.2d 644, 651 (W.D. Pa.1999)).  Despite Greenwood's vigorous and creative arguments to the contrary, the Court finds that Count II of the Complaint, which alleges negligence on the part of the Defendants, is indisputably grounded in the Lease agreement, and should, therefore, be dismissed.

The Plaintiff first seeks to avoid application of the gist of the action doctrine by arguing that consideration of the doctrine is premature.  In support of this argument, Greenwood notes that "courts have been reluctant to apply the gist of the action doctrine to dismiss tort claims where the existence of a contract is still in question." M.H. Rydek Elec., LLC v. Zober Indus., No. 07-3885, 2007 WL 3407130 at * 2 ( E.D. Pa.  Nov. 15, 2007) (collecting cases).  Here, however, NCS admits uniquvocally that it was a successor to the original lessee, Thrift, and that it was bound by the terms of Thrift's lease with Greenwood. (Doc. 43 at 9).  [8] As to NCS, application of the

---

[8]"When a [party] alleges a fact in a court of justice, for [its] advantage, [it] shall not be allowed to contradict it afterwards." Tops Apparel Mfg. Co. v. Rothman, 244 A.2d 436, 439 n.8 (Pa. 1968) (quoted in Toledo Mack Sales & Serv., Inc., v. Mack Trucks, Inc., 530 F.3d 204, 229 n.18 (3d Cir. 2008)).

doctrine is not premature.[9]

Greenwood next argues that NCS's concession that it was the assignee of Greenwood's lease with Thrift does not preclude Greenwood from asserting negligence claims against NCS. Greenwood cites Pennsylvania case law for the proposition that the gist of the action applies only where "the complained-of conduct [finds] *no substantial basis in the law of torts*." (Doc. 45 at 7) (italics and underlining in original). According to Greenwood, its claims for destruction of the leased building and premises "find ample support in the law of tort and do not arise solely from contract term [sic]." (Id. at 8). Greenwood directs the Court's attention to Reitmeyer v. Sprecher, 243 A.2d 395 (Pa.1968).

The Pennsylvania Supreme Court decision in Reitmeyer rejected the continued viability of a decades-old principle of Pennsylvania landlord-tenant law in favor of the approach articulated in the Restatement (Second) of Torts. In doing so, it repudiated its prior holding in Harris v. Lewistown Trust Co., 191 A. 34 (Pa.1937), that a landlord's promise to repair, made during and following negotiation of a lease, could not support a tort claim against the landlord for failure to repair. Citing section 357 of the Restatement (Second) of Torts, which discusses a landlord's liability in tort for personal injury incurred on leased premises, the Court in Reitmeyer found that given the unequal bargaining position of tenants and landlords, residential leases are not negotiated at arm's length. Therefore, where a landlord induces a tenant to execute a lease for

---

[9]The prematurity argument is also insufficient to overcome dismissal of the negligence claims lodged against Omnicare. Even if the Court were to assume, for purposes of the pending Motion, that Omnicare was bound by the terms of the lease, the negligence claims against it would, as the discussion with respect to NCS, infra, demonstrates, be barred by the gist of the action doctrine. Moreover, Greenwood has not set out sufficient facts to state a plausible claim that Omnicare owed it a duty separate and apart from any obligation it may have had under the lease. Thus, even in the absence of any contractual obligation, the negligence claim against Omnicare cannot survive.

obviously defective premises by promising to make repairs, "a duty on the part of the landlord [arises] to repair and make safe the defective condition of the premises and if, as alleged, physical harm [is] caused to the tenant by a breach of the landlord's promise to repair," the landlord should be liable in tort. Reitmeyer, 243 A.2d at 398. "It is not the contract per se which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract." Id. (quoting Evans v. Otis Elev. Co., 168 A.2d 573, 575 ( Pa.1961)).

Greenwood also cites a second case, Reed v. Dupuis, 920 A. 2d 861, 867 (Pa. Super. 2007), which, like Reitmeyer, turns on a residential landlord's duty to his tenant. There, the Plaintiff filed a single count complaint alleging that her landlord was negligent in failing to correct a water damage to the leased premises. The complaint alleged that the landlord had knowledge of the condition, the condition created an unreasonable risk, and that the landlord promised to remedy the condition, but did not use reasonable care in doing so. Id. at 866. In response, the landlord raised the gist of the action doctrine, arguing that an exculpatory clause in the lease barred the negligence claim.

The Court in Reed rejected application of the doctrine, citing section 323 of the Restatement (Second) of Torts and section 17.6 of the Restatement (Second) of Property. "These sections, similar to section 357 of the Restatement (Second) of Torts, imposed on a landlord an independent legal duty to exercise reasonable care when he/she undertakes to render services for a tenant and repair[s] known dangerous conditions on the leased premises." Id. at 867.

Despite Greenwood's attempt to force this matter into the framework of the gist of the action analysis in Reitmeyer and Reed, it does not fit. Those cases, unlike this one, dealt with extra-contractual duties imposed upon residential landlords, who are deemed to have a "special relationship" with their lessees. The sections of the Restatements in which those duties are

17

grounded do not have any arguable application to the maintenance obligations of a commercial

tenant. The distinction between <u>Reitmeyer</u> and <u>Reed</u> and this case is illustrated by the Court's

reasoning in <u>2401 Walnut, L.P. v. Am. Express Travel Related Serv. Co.,</u> Civ. No. 07-1281, 2009

WL 398727 (E.D. Pa. Feb. 18, 2009).

There, the Defendant was alleged to have left leased premises in unsatisfactory condition.

Responding to a two count complaint alleging breach of contract and negligence, the Defendant

"argue[d] that plaintiff's negligence count was essentially duplicative of its breach of the lease count

and [was] therefore barred under [the] 'gist of the action' . . . doctrine[ ]." <u>Id.</u> at * 3.  Noting that

"the . . .  doctrine is to be applied with circumspection in a landlord-tenant context," the Court

distinguished commercial from residential lease agreements. "[I]n the context of a residential lease

dispute, one must consider whether application of the gist-of-the-action doctrine would dilute the

protections afforded to the tenant under the state's common law." <u>Id.</u> at 5.  In contrast, evaluation of

the obligations of a commercial tenant under a lease negotiated in an arms-length transaction,

"where no 'special relationship' exists," turns on whether the "plaintiff's negligence claim is

sufficiently distinct from [the] breach-of-the-lease claim as to be capable of being independently

pursued." <u>Id.</u> at 6.  The Court, in an analysis which is equally applicable to Greenwood's arguments,

observed that the tenant's obligation under to lease to keep the premises in good order was a duty:

> "[C]reated by the larger social obligations embodied in the law of
> torts." <u>See</u>, <u>e.g.</u>, <u>U.S. Gypsum Co. v. Schiavo Bros., Inc.</u>, 668 F.2d
> 172,174 (3d Cir.1981) ("The obligation of a tenant to return the
> leasehold property in the condition in which it was received,
> reasonable wear and tear excepted, is fundamental to the
> landlord-tenant relationship, even in a commercial setting.")
> (applying Pennsylvania law). *The legal duty is not, however, one*
> *that is "separate and distinct" from the duties that defendant*
> *assumed under the lease.* [The lease] terms subtly expound upon a
> tenant's duty under common law "to return the leasehold property in
> the condition in which it was received, reasonable wear and tear

18

excepted." [M]odifications to the leaseholder's common law duty to
repair are, of course, the parties' prerogative to bargain for. See
Restatement (Second) Property: Landlord and Tenant § 12.2 cmt. l.
("The obligations assumed by the tenant . . . to keep the leased
property in repair depend, of course, on the intention of the parties
as manifested by the language [expressing] the promise.").
Accordingly, [the] complaint alleges that defendant violated legal
duties that derive from specific provisions of the commercial lease.
Application of the gist-of-the-action doctrine in this context, where
the lease was negotiated between sophisticated parties in an
arms-length transaction, would not cause the tenant's obligation to
repair to "be rendered meaningless" and would not cause
"underlying social policies" not to be given effect. Reed, 920 A.2d
at 867.

2401 Walnut, 2009 WL 398727 at * 6 (some internal citations omitted) (emphasis added).  The

Court thus concluded that the gist of the action doctrine barred the plaintiff's negligence claim.

Greenwood has failed to convince the Court that a different result should obtain here. [10]

Although Greenwood  claims that NCS intentionally and negligently breached its contract

with plaintiffs, the bottom line is that "it does not matter in what manner defendants committed the

alleged breach; it is still simply a breach of contract, and the gist of plaintiff['s] action in this case

clearly sounds in contract." McShane v. Recordex Acquisition Corp., No. 01117 Feb. Term 2003,

070576, 2003 WL 22805233 at *4 (Pa. Com. Pl. Nov. 14, 2003). But for the contract, the

Defendants would not have been in lawful possession of the leased premises, and would not have

owed any duty to the Plaintiff to maintain or repair the property. In these circumstances, the

---

[10]Greenwood's citation to Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc., 530 F.3d 204
(3d Cir. 2008) does not alter the Court's conclusion.  There, the Court of Appeals considered whether a
counterclaim for misappropriation of trade secrets could be construed as a claim for breach of a licensing
agreement. Concluding that it could not, the Court relied on the fact that Mack Trucks, Inc. had
taken"several steps independent of issuing a license agreement to insure that its dealers did not
[share information with] unauthorized persons." Id. at 229.  "Thus, Toledo's duty did not arise simply from
its license agreement with Mack, but instead had roots in its independent duty to keep Mack's trade secrets
confidential, and the counterclaim can properly be seen as sounding in tort." Id.  The facts of Toledo Mack
are simply not analogous to those presented here.

contract is inextricably intertwined with the negligence claim, and the negligence claim should be dismissed.

        2.          **The Punitive Damages Claim**

Under Pennsylvania law there is no independent cause of action for punitive damages, see Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802 (Pa.1989) (stating that " [s]ince punitive damages are an element of damages arising out of the initial cause of action, if that cause of action is dismissed, the punitive damages [claim] cannot stand").  Equally fundamental is the fact that punitive damages are not available in actions for breach of contract. See Ash v. Cont'l Ins. Co., 932 A.2d 877, 881 (Pa. 2007) (observing that "under Pennsylvania law, punitive damages are typically only awarded in tort actions").  Because, as the Court has explained, Greenwood has not advanced a viable claim in tort,  the claim for punitive damages should be dismissed.

### III. <u>CONCLUSION</u>

For the reasons set out above, it is recommended that the Defendants' Motion to Dismiss Counts II and III of the Amended Complaint (Doc. 42) be granted.

Pursuant to the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

20

Dated:   22 February, 2010

cc:      Hon. David Stewart Cercone
         United States District Judge

         Counsel of Record via CM-ECF