IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREENWOOD LAND COMPANY,<br>    Plaintiff<br><br>    vs.<br><br>OMNICARE, INC.; NCS HEALTHCARE<br>OF NEW YORK, INC.,<br>    Defendants<br><br>OMNICARE, INC.; NSC HEALTHCARE<br>OF NEW YORK, INC.,<br>    Third Party Plaintiffs<br><br>    vs.<br><br>UGL EQUIS CORPORATION,<br>    Third Party Defendant | Civil Action No. 09-686<br>Judge David Stewart Cercone |

## **MEMORANDUM OPINION**

Pending is UGL Equis Corporation's Motion to Dismiss the Third Party Complaint (ECF No. 57). Counts II and III of that Complaint, which sound in negligence, will be dismissed. As to the breach of contract and contractual indemnification claims set out in Counts I and IV, the Motion to Dismiss is deemed to be a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). This Motion to Transfer will be granted.

### I. **Background**

In 1994, Greenwood Land Company ("Greenwood"), as landlord of commercial property located in Sharon, Pennsylvania ("the Sharon property"), entered into a Lease Agreement (" the Lease") with Thrift Drug, Inc. ("Thrift"). In late 1997 or early 1998, the assets and liabilities of Thrift were acquired by NCS and, on January 20, 1998, Thrift assigned its tenancy under the Lease to NCS, a wholly-owned subsidiary of NCS Healthcare of New York, Inc. ("NCSH"). In January 2003, Omnicare, Inc. ("Omnicare") acquired NCSH, and, according to Greenwood,

became the de facto assignee of the Lease. (ECF No. 3 at ¶ 20(j)). In the single surviving count[1] of its Amended Complaint (ECF No. 3), Greenwood claims that Omnicare and NCSH (collectively, "Omnicare") committed various breaches of that Lease. Omnicare, in turn, filed a five count Third Party Complaint (ECF No. 50) against UGL Equis Corporation ("Equis"), a company retained by Omnicare pursuant to a Real Estate Services Agreement ("the Service Agreement"), to provide professional real estate services in connection with the Sharon property. In Count I of the Third Party Complaint, Omnicare alleges that any damages recoverable by Greenwood against Omnicare are attributable to Equis's breach of the Service Agreement. In Count II, Omnicare asserts that it justifiably relied on false and negligent representations made by Equis to the effect that Equis had transmitted to Greenwood timely written notice that the Lease would not be renewed, and had apprised Greenwood of water leaks and associated damage at the Sharon property. Count III alleges negligence on the part of Equis in failing to communicate with or verify Greenwood's receipt of notification regarding nonrenewal of the Lease and the water damage to the Sharon property. In Count IV, Omnicare seeks contractual indemnification, and, in Count V, asserts contribution rights against Equis.[2]

## II. Standard of Review

In ruling on a Motion to Dismiss made pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations in the complaint as true and view reasonable inferences in the light most favorable to the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint does not satisfy the requirements of Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (modifying longstanding 12(b)(6) standard set out in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937 (2009) (clarifying that Twombly standard applies beyond the antitrust context).

---

[1] The remaining counts, which sounded in negligence, were dismissed in a Memorandum Order dated March 25, 2010 (ECF No. 48).

[2] Because Omnicare consents to dismissal of Count V, the Court need not consider it. See (ECF No. 60 at 5).

To survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must "make a 'showing' rather than a blanket assertion of an entitlement to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008). In other words, he must supply "enough facts to raise a reasonable expectation that discovery" will reveal evidence supporting his claim. Id. at 232 (quoting Twombly, 550 U.S. at 556 n.3). The United States Court of Appeals for the Third Circuit has instructed:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Where the court is unable to infer more than a possibility of misconduct, the complaint does not "show" that the pleader is entitled to relief.

### III.     Discussion

#### A.     The Negligence Claims: The Gist of the Action and Economic Loss Doctrines

Equis argues first that the negligent misrepresentation and negligence claims set out at Counts II and III of the Third Party Complaint respectively must be dismissed based on the gist of the action doctrine:

> Count II purports to state a cause of action for fraudulent and negligent misrepresentation, and Count III a cause of action for negligence. Both counts are based upon services which Equis was allegedly obligated to perform under the Services Agreement. There is no allegation that Equis had an independent duty - outside of the Services Agreement - to perform such services.

(Doc. 58 at 4). "Under Pennsylvania law, the 'gist of the action' doctrine will bar a claim for negligent misrepresentation when said claim sounds in contract." Smith v. Lincoln Benefit Life Co., No. 08-1324, 2009 WL 789900 at * 20 (W.D. Pa. March 23, 2009) (citations omitted). "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a

contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." Id. (quoting Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp.2d 644, 651 (W.D. Pa. 1999).

The economic loss doctrine, also invoked by Omnicare, is similar. Under this doctrine, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Tech., Inc. v. Columbia Gas Co. of Pennsylvania, 985 A.2d 840, 841 n.3 (Pa. 2009) (quoting Adams v. Copper Beach Townhouse Cmtys., L.P., 816 A. 2d 301, 305 (Pa. Super. 2003)). [3] See also Bouriez v. Carnegie Mellon Univ., No. 02-cv-2104, 2010 WL 1416845 at * 2 (3d Cir. April 6, 2010) (stating that economic loss doctrine "prohibits plaintiffs from recovering in tort economic loss to which their entitlement flows only from contract") (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F. 3d 604, 618 (3d Cir. 1995)); Sch. Lane House Philadelphia, LLC, v. RAIT P'ship, L.P., Civ. A. 04-3821, 2005 WL 2397146 at * 4 (E.D. Pa. September 27, 2005) (same); KNK Med.-Dental Specialties, Ltd. v. Tamex Corp., No. Civ. A. 99-3409, 2000 WL 1470665, at *5 (E.D.Pa. Sept. 28, 2000) (same). [4]

Both doctrines serve "to maintain the conceptual distinction between breach of contract claims and tort claims" by preventing a plaintiff from attempting to cast what is really a breach of contract claim as a tort claim. eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. 2002). They each "bar tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3)

---

[3] It is sometimes difficult to distinguish these doctrines. See, e.g., Sunquest, 40 F.Supp.2d at 659 n. 13 (W.D.Pa.1999) ("the economic loss analysis appears similar, if not identical to, the application of the 'gist of the action' doctrine").

[4] Omnicare seeks to save its negligence claim from the economic loss doctrine by arguing that there was property damage - albeit not to property owned by Omnicare - as a result of Equis's failure to report a leak. Omnicare does not cite authority for the proposition that damage to a landlord's property is sufficient to allow a tenant to claim property damage for purposes of circumventing the economic loss doctrine in a suit against a third party. Also problematic is the fact that Omnicare now seeks to use as a weapon the very doctrine that it invoked as a shield in seeking dismissal of negligence claims made by Greenwood in the Amended Complaint.

where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Wilmington Trust Co. v. County of Allegheny, 640 F. Supp.2d 643, 648 (W.D. Pa. 2009) (citing eToll, 811 A.2d at 19).

Omnicare contends that the tort claims it asserts are exempt from the bar imposed by these doctrines, pointing to Pennsylvania decisions in which courts have held that claims against at least some professionals can be based both in tort and in contract. In Duke & Co. v. Anderson, 418 A.2d 613 (Pa. Super.1980), for example, the Court held that a plaintiff could elect:

> either to sue [an] attorney in assumpsit, on the theory that the attorney by failing to follow specific instructions committed a breach of contract; or to sue the attorney in trespass on the theory that the attorney failed to exercise the standard of care that he was obliged to exercise.

Id. at 616. See also Gorski v. Smith, 812 A.2d 683, 693-94 (Pa. Super. 2002) (breach of contract and negligence claims may be made against attorney whose rendering of professional services did not comport with standards expected in the profession); Hoyer v. Frazee, 470 A.2d 990, 992 (Pa. Super.1984) (recognizing "that there are cases in which a plaintiff could assert two distinct causes of action against an attorney, one in contract and one in tort"), abrogated on other grounds by Bailey v. Tucker, 621 A.2d 108 (Pa..1993); Koken v. Steinberg, 825 A.2d 273 (Pa.Commw. 2003) (recognizing that accountant may be sued in contract and for malpractice for failure to meet proper standard of performance). According to Omnicare, Equis, because it is a professional property manager, may also be sued in tort on the theory that its conduct fell short of professional property management standards.

In Rapidigm v. ATM Mgmt. Serv. LLC, 63 Pa.. D & C. 4th 234 (Pa. Com. Pl. 2003), the Court discussed application of the gist of the act doctrine to suits against professionals:

> Under settled Pennsylvania case law, a client may bring both a contract action and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected of the profession . . . No Pennsylvania courts have applied any of the doctrines barring tort recovery in relationships arising out of a contract (including the gist of the action doctrine), to claims involving a professional's failure to exercise to proper standard of care . . . The application of the gist of the action . . . doctrine would

5

> be inconsistent with recent case law which gives a broad reading to
> prior case law allowing a client to bring both breach of contract
> and professional negligence actions based on the professional's
> failure to exercise proper skill and care.[5]

Id. at 240-41. Significantly, the Court then observed: "To date, the Pennsylvania Courts have allowed professional negligence actions to be maintained *only* against certain licensed professionals." Id. at 241 (emphasis added). "The Rules of Civil Procedure governing professional liability actions are applicable to attorneys and other persons who are licensed pursuant to an Act of Assembly. Pa R. Civ. P. 1042.1." Id. at 242 n.4. Included in this list are certain health care providers, accountants, architects, chiropractors, dentists, engineers and land surveyors, nurses, optometrists, pharmacists, physical therapists, psychologists, veterinarians, attorneys, and persons or entities holding similar licenses in other states. Pa. R. Civ. P. 1042.1. Property management providers are not among the enumerated professionals.

The question then becomes whether the gist of the action and economic loss doctrines continue to apply to negligence claims made against professionals other than those specified. According to the Court in Rapidigm, the answer "depends on whether parties contracting with [those] service providers should receive the protections of tort law or whether their rights should be governed solely by the terms of their agreement with the service provider." Rapidigm at 63 Pa. D & C. 4th at 242. "Where the claims of a party to a contract involve only economic losses, the trend in the law has been to look solely to contract law to determine the scope of the parties'

---

[5] The Court noted that professional negligence actions are permitted pursuant to section 299A of the Restatement of Torts (second) which provides:

> Section 299A. Undertaking in profession or trade.
>
> Unless he represents that he has greater or less skill or knowledge, one
> who undertakes to render services in the practice or a profession or trade
> is required to exercise the skill and knowledge normally possessed by
> members of that profession or trade in similar communities.

Id. at 241.

6

duties and the remedies for a breach of these duties." Id. [6] A party should not be permitted to "disrupt the expectations of the parties by supplanting their agreement with a tort action that claims that the party misperformed the agreement." Factory Mkt., Inc. v. Schuller Intern. Inc., 987 F. Supp.387, 394 (E.D. Pa.1998). "The rationale of the economic loss rule is that tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." Id. at 395 (quoting Palco Linings, Inc. v. Pavex, Inc., 755 F. Supp. 1269, 1271 (M.D.Pa. 1990)).

Despite Omnicare's attempt to craft viable negligence claims against Equis, it has not cited - and the Court has not located - authority for the proposition that a real estate property manager falls within the malpractice rule carved out for attorneys, accountants, and other licensed professionals. The negligence claims advanced against Equis are, in reality, claims that lie within the parameters of the Services Agreement. The focus of Omnicare's claims does not implicate the skill, expertise, or special knowledge that Equis brought to bear on its management of the Sharon property, but instead rests on whether Equis did what it was contractually bound to do.

The decision in Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270 (Pa. 2005) is not to the contrary. There, the Court addressed the following question:

> whether a building contractor [relying on Section 552 of the
> Restatement (second) of Torts [7]] may maintain a negligent

---

[6] The Court discussed several cases in which the deciding courts applied the economic loss doctrine despite the plaintiff's position that the doctrine should not apply to professionals such as computer consultants, because of the absence of professional standards. "Professionals may be sued for malpractice because the higher standards of care imposed on them by their profession and by state licensing requirements engenders [sic] trust in them by clients that is not the norm of the marketplace. When no such higher code of ethics binds a person, such trust is unwarranted. Hence, no duties independent of those created by contract or under ordinary tort principles are imposed on them." Rapidigm at 63 Pa. D & C. 4th at 247-48 (quoting Hosp. Computer Sys., Inc, v. Staten Island Hosp., 788 F. Supp. 1351, 1361 (D.N.J. 1992)).

[7] This Section, entitled "Information Negligently Supplied for the Guidance of Others," reads in relevant part:

(1) One who, in the course of his business, profession or

7

> misrepresentation claim against an architect for alleged misrepresentations in the architect's plans for a public construction contract, where there was no privity of contract between the architect and the contractor, but the contractor reasonably relied upon the misrepresentations in submitting its winning bid and consequently suffered purely economic damages as a result of that reliance.

Id. at 272 (footnote supplied). The Court observed that "the question of which business relationships should be deemed exempt from the privity requirement (and thus exempt from the economic loss rule) must be decided on a case by case basis." Id. at 274. Recognizing that "[o]ftentimes, the party ultimately relying upon . . . specialized expertise has no direct contractual relationship with the expert supplier of information, and therefore has no contractual recourse[,]" id. at 286, the Court adopted Section 552 of the Restatement, and "embrace[d]" the holding announced in Davidson and Jones, Inc., v. County of New Hanover, 255 S.E.2d 580 (N.C. App.1979).

In Davidson, the Court found that an architect who submitted a faulty report could be liable to a general contractor for negligent misrepresentation, reasoning that the architect owed a duty of care to the contractor "flowing from the parties' working relationship." Id. at 584. The Davidson Court wrote: "Accordingly, we hold that an architect in the absence of privity of

---

> employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) [T]he liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and;
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

8

contract may be sued by a general contractor . . . working on a construction project for economic loss reasonably resulting from breach of an architect's common law duty of care in the performance of his contract with the owner." Id. In adopting this reasoning, the Pennsylvania Supreme Court was careful to reaffirm that where a breach of duty "arises under the provisions of a contract between the parties, *[it] must be redressed under contract, and a tort action will not lie.*" Bilt-Rite, 866 A.2d at 288 (quoting Tommy L. Griffin Plumbing & Heating, Inc. v. Jordan, Jones & Goulding, Inc. 463 S.E.2d 85, 88 (S.C.1995) (emphasis added)).

The Court of Appeals for the Third Circuit has clarified that the holding in Bilt-Rite does not apply here. See Azur v. Chase Bank, USA, Nat'l Assn., 601 F.3d 212, 223-24 (3d Cir. 2010) (explaining that Bilt-Rite created a narrow exception to the doctrine of economic loss, allowing a commercial plaintiff to seek recourse from party with special expertise, where the plaintiff relied on that expertise, *but lacked a contractual relationship*) (emphasis added); Sovereign Bank, v. BJ's Wholesale Club, Inc., 533 F.3d 162, 177 (3d Cir. 2008) (same).

Here, Omnicare has a contractual relationship with Equis. Accordingly, any remedy that Omnicare may have lies in an action for breach of contract; the gist of the action and economic loss doctrines preclude claims sounding in negligence. Consequently, Counts II and III of the Third Party Complaint will be dismissed.

### B. Count I - The Breach of Contract Claim

Equis next argues that Count I of the Third Party Complaint - the breach of contract claim - should be dismissed because Paragraph 18.06 of the Services Agreement made between Omnicare and Equis contains the following mandatory forum selection clause:

> Governing Law. This Agreement shall be governed by and construed in accordance with the laws of Illinois, without giving effect to the principles of conflict of laws. The parties agree that the venue shall be Chicago, IL.

(Doc.50 Ex.C at 9). Equis does not frame its argument in terms of the relevant venue statutes, and fails to identify statutory or case authority for dismissal of this claim.[8] In fact, it is clear

---

[8] 28 U.S.C. § 1406(a) provides that a district court may dismiss an action where venue has been laid in the wrong division. This is not the case here. The general venue provisions set forth in 28 U.S.C. §

9

that Equis does not, in actuality, seek dismissal. Instead, it requests transfer of this claim - and by analogy, the Count IV contractual indemnification claim - to the District Court for the Northern District of Illinois: "The Third Party Complaint contains no suggestion that the forum selection provision in the Services Agreement is unenforceable . . . These sophisticated commercial parties] agreed in advance as to an appropriate and convenient forum, and the Court should enforce their clearly expressed intent." (ECF No. 58 at 10).

The Court of Appeals for the Third Circuit has determined that when a party files a motion to dismiss based on a forum selection clause, the court does have discretion to dismiss the claim. Salovaara v. Jackson Nat. Life Ins. Co, 246 F.3d 289, 299 (3d Cir. 2001). However,

---

1391 read, in relevant part:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
>
> * * *
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in an judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Venue in the Western District of Pennsylvania is proper under Section 1391(a). First, jurisdiction in this matter is based solely on diversity. Where a corporate defendant resides for purposes of § 1391(a)(1) is controlled by 28 U.S.C. § 1391(c). Under that provision, a corporation is deemed to reside in any district where it was subject to personal jurisdiction at the time the lawsuit was filed. It is undisputed that Equis was subject to jurisdiction in the Western District of Pennsylvania at the time that the third party action was filed. Given that venue is proper under Section 1391(a)(1), it is not necessary to address the other provisions of Section 1391. See Superior Precast, Inc. v. Safeco Ins.Co., 71 F.Supp.2d 438, 443 (E.D. Pa. 1999). Because venue lies pursuant to Section 1391(a)(1), and Equis has not argued that the forum selection clause mandates litigation in a state court, see Salovaara v. Jackson Nat. Life Ins. Co, 246 F.3d 289, 297-98 (3d Cir. 2001) (observing that "[t]ransfer is not available . . . when a forum selection clause specifies a non-federal forum"), no part of 28 U.S.C. § 1406(a), which provides for dismissal, applies.

10

in the same case, the Court stressed that "as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than to dismiss." Id. [9] In light of this preference for transfer the Court construes Equis's Motion to dismiss Counts I and IV of the Third Party Complaint as one made pursuant to 28 U.S.C. § 1404(a) instead of under Fed. R. Civ. P.12(b)(6).

In order for Section 1404(a) to apply at all, venue must be proper in the both the original and requested venues. Jumara v. State Farm Ins.Co., 55 F.3d 873, 878 (3d Cir.1995). As the Court has discussed, venue is proper in the Western District of Pennsylvania, and the propriety of venue in the Northern District of Illinois is uncontested. In deciding any section 1404(a) motion, the Court must "engage in a case-specific balancing process" of public and private factors. Id. at 878, 879 (citing Stewart Org., Inc. v. Ricoh, 487 U.S. 22, (1988)). The relevant private interests include: 1) the plaintiff's choice of forum; 2) the defendant's choice of forum; 3) where the claim arose; 4) the convenience of the parties as indicated by their relative physical and financial conditions; 5) the convenience of the witnesses, but only to the extent that they may actually be unavailable for trial; and 6) the location of books and records, but again only insofar as they cannot be produced in the alternative forum. Id. In general, a plaintiff's choice of forum is the paramount consideration in deciding whether transfer of venue is warranted.

The deference due a Plaintiff's choice of forum is substantially diminished where there is a valid forum selection clause. "Within [the Jumara] framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum." Id. at 880. This contractual expression of preference is not dispositive, but is "entitled to substantial consideration." Id. (internal citations omitted). "Where the forum selection clause is valid, which requires that there has been no fraud, influence, or overweening bargaining power - the

---

[9] "[T]he effect to be given a contractual forum selection clause in diversity cases is determined by federal not state law." Id. at 877. The Court explained: "Because "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive in nature," federal law applies in diversity cases. Jumara, v. State Farm Ins., 55 F.3d 873, 877 (3d Cir. 1995) (citations omitted).

11

plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." Id. (citing The Bremen v. Zapata Off-shore Co., 407 U.S. 1, 12-13 (1972)). Omnicare has not met that burden.

Omnicare has not alleged circumstances bearing on the validity of the forum selection clause. Without referring to Jumara, Omnicare states only: "Here, the case was initiated by the plaintiff in the Western District. The property which is the subject of the disputed lease is located in Sharon, Pennsylvania, which is in this Court's jurisdiction. The majority of witnesses will be within this jurisdiction. There is no connection between this case and Illinois . . . Venue is proper in this district." (ECF No. 60 at 14).

The Court finds that none of the considerations cited suffices to overcome enforcement of forum selection clause. Prior to initiating suit against Equis, Omnicare freely contracted to litigate issues which might arise under the Services Agreement in an alternate forum. Moreover, it did so knowing that the Agreement pertained to property located in Pennsylvania. Omnicare does not argue that litigation of its claims in Illinois will be unduly burdensome. The fact that relevant witnesses may be located in Pennsylvania does not impact the transfer analysis, as Omnicare does not assert that these witnesses are unavailable for trial in Illinois. Similarly, the location of relevant records fails to tip the balance away from transfer. "The location of documents is a neutral factor "[in] today's era of photocopying, fax machines and Federal Express." Aerotel, Ltd. v. Sprint Corp., 100 F. Supp.2d 189, 197 n.2 (S.D.N.Y. 2000) (quoting Coker v. Bank of Am., 984 F. Supp.757, 766 (S.D.N.Y. 1997).

Neither Omnicare nor Equis addresses the public factors relevant to a section 1404(a) transfer request - the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; a locale's interest in deciding local controversies; the public policies of the fora; and the Court's familiarity with applicable state law. Jumara, 55 F.3d at 879-80. Although there may be some marginal convenience and economy in having the obligations of Equis determined in the context of the litigation between Greenwood and Omnicare, this is not necessarily so. The other public factors do not militate in favor of litigating the contract claims against Equis in Pennsylvania.

The Court has considered each of the Jumara private and public factors, and finds that they do not counterbalance enforcement of forum selection clause. Consequently, the Court will exercise its discretion to grant the Motion to Transfer.

**IV. CONCLUSION**

For the reasons set forth above, Equis's Motion to Dismiss the Third Party Complaint (ECF. No. 57) will be granted as to Counts II and III. Insofar as the Motion to Dismiss pertains to Counts I and IV, it will be construed as a Motion to Transfer Venue Pursuant to 28 U.S.C. 1404(a), and will be granted. An Appropriate Order follows.

Date: January 5, 2011

                                                  s/ David Stewart Cercone
                                                  David Stewart Cercone
                                                  United States District Judge

cc:      Counsel of Record via CM-ECF