IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GREENWOOD LAND COMPANY**, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09cv686 |
| | ) | **Electronic Filing** |
| **OMNICARE, INC., NCS** | ) | |
| **HEALTHCARE OF NEW YORK, INC.**, | ) | |
| and **OMNICARE OF NEW YORK,** | ) | |
| **LLC**, | ) | |
| Defendants | ) | |

## **OPINION**

Plaintiff commenced this diversity action seeking redress for the alleged (1) loss of rent and (2) loss of prorated taxes and insurance due to Omnicare, Inc., NCS Healthcare of New York, Inc., and Omnicare of New York, LLC 's ("defendants") failure to provide timely notice of termination under a commercial lease and (3) property damage to the leased premises. Presently before the court is defendants' renewed motion for summary judgment. For the reasons set forth below, the motion will be granted in part and denied in part.

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's claim, and upon which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial

burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. When the movant does not bear the burden of proof on the claim, the movant's initial burden may be met by demonstrating the lack of record evidence to support the opponent's claim. National State Bank v. National Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986) (quoting Fed.R.Civ.P. 56 (a), (e)) (emphasis in Matsushita). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

In meeting its burden of proof, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Nor can the opponent "merely rely upon conclusory allegations in [its] pleadings or in memoranda and briefs." Harter v. GAF Corp., 967 F.2d 846 (3d Cir. 1992). Likewise, mere conjecture or speculation by the party resisting summary judgment will not provide a basis upon which to deny the motion. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382-83 n.12 (3d Cir. 1990). If the non-moving party's evidence merely is colorable or lacks sufficient probative force summary judgment must be granted. Anderson, 477 U.S. at 249-50; see also Big Apple BMW, Inc. v. BMW of North America, 974 F.2d 1358, 1362 (3d Cir. 1992), cert. denied, 113 S.Ct. 1262 (1993) (although

2

the court is not permitted to weigh facts or competing inferences, it is no longer required to "turn a blind eye" to the weight of the evidence).

In 1994, Greenwood Land Company ("Greenwood"), as landowner of commercial property located in Sharon, Pennsylvania ("the property"), entered into a lease ("the lease") with Thrift Drug, Inc. ("Thrift"). In late 1997 or early 1998, the assets and liabilities of Thrift were acquired by NCS Healthcare of New York, Inc. ("NCS"), and, on January 20, 1998, Thrift assigned its tenancy under the lease to NCS, a wholly-owned subsidiary of NCS Healthcare, Inc. In January 2003, Omnicare, Inc., acquired NCS Healthcare, Inc., and according to Greenwood became the de facto assignee of the lease. Amended Complaint (Doc. 3) at ¶ 20(j).

The lease covered a term beginning March 2, 1994, and ending April 1, 2004. It contained two options to extend which were to run from April 1, 2004 to April 1, 2009, and April 1, 2009 to April 1, 2014. These extensions were automatic in that the lease continued in force unless the tenant provided notice of intent not to renew at least six months prior to the expiration of the current term.

The lease provided for annual rent of $171,749.04 during the first ten years to be paid in monthly installments of $14,312.42. If the "Options to Extend" were enacted, the annual rate was to increase to $200,000.04 with monthly installments of $16,666.00. In the event that the tenant failed twice to pay rent in one year, the section entitled "Late Charges" required a late fee of five percent (5%). Also, the "Default Clause" required the tenant to pay real estate taxes and insurance on the property in the event of a default. The election of the lessor to pursue any one or more of these remedies did not foreclose the use of any other rights or remedies under the lease.

Moreover, the lease provided for the payment of rent as it became due. It did not contain an acceleration clause permitting the recovery of future rent in the event of a default.

The lease contained a section entitled "Right of First Refusal." It provided that the "[l]andlord shall not during the term of this lease sell or otherwise dispose of any property . . . to anyone other than [t]enant" until the tenant is notified and fails to purchase the entire premises within 60 days of notification. Finally, the lease provided:

> Tenant agrees that upon the termination of this lease, whether by expiration of time or otherwise, possession of the demised premises will be surrendered to Landlord in good, tenantable condition, broom clean except for damages caused by ordinary wear and tear or damage or destruction by acts of God or cause beyond Tenant's control, and except for any conditions which, under the provisions of this lease, it is the obligation of the Landlord to remedy.

[Exhibit 7.a, p.21]

Thrift and ultimately Omnicare rented the property pursuant to the lease through the ten year term and the first five year renewal term. Property damages to the premises existed at the end of the first five year option term. This included interior water damage from a leaking roof, mold and disrepair of the parking lot. Defendants' employees were aware of mold inside the building no later than November 15, 2007.

Plaintiff did not receive timely notice of defendants' intent not to renew the lease for the second option term. Defendants claim to have sent a letter from their real estate representative, Gene Slageter, Jr., on June 23, 2008, indicating the tenant would vacate the premises on March 31, 2009. Plaintiff never received that letter.

On February 6, 2009, plaintiff received a letter from Slageter advising that the tenant would vacate the premises on March 31, 2009, and requesting a walk-through be scheduled prior to that date. On February 27, 2009, plaintiff's attorney sent a letter to Slageter indicating

plaintiff expected defendants to honor the rental payment obligations during the second five-year option term. In a follow-up letter of March 24, 2009, plaintiff expressed the view that defendant's February 6, 2009 letter did not satisfy the six months advanced notice requirement in the lease.

Defendants vacated the property on or prior to March 31, 2009. The property was left in deplorable condition. On April 1, 2009, plaintiff had to change the building's exterior locks to gain entry because defendants had not returned the keys. Plaintiff also turned off the HVAC systems in the building. These measures were not taken to evict, exclude or prevent the tenant from reoccupying the property. To the contrary, plaintiff's agent had done "all that she could think to do to persuade defendants to return to the building and pay the rent due."

In October of 2009, plaintiff came to an agreement with Community Food Warehouse of Mercer County ("CFWMC") to donate the property. On November 17, 2009, plaintiff conveyed the property to CFWMC for $1 ("the conveyance"). Plaintiff also made a $50,000 donation to CFWMC at the same time. Plaintiff did not notify defendants that it was conveying the property. Each of plaintiff's three partners recorded an individual tax savings of $51,640.00 as a result of the conveyance.

Plaintiff obtained an appraisal of the property prior to the conveyance. A 2009 appraisal by Richard English indicated the property had a fair market value of $245,000.00 "in the condition in which it was left when the Tenant abandoned it." Plaintiff also obtained an estimate indicating it would cost $694,738.21 to restore the building from its "deplorable" to a rentable condition, including the removal the fungal growth and restoring the damage caused by water infiltration. An estimate to repair and repave the parking lot came in at $59,250.00.

The CFWMC spent "around $687,308.00" to renovate the property.  Thereafter, Larry Haynes, Executive Director of the Community Foundation of Western Pennsylvania/Eastern Ohio, placed the value of the building at $800,000.00.

Plaintiff maintains that because defendants failed to give timely notice and refused to make payments after April 1, 2009, it is entitled to recover rent throughout the "extended [second option] period" as it becomes due.   This equals a loss of rent at $17,916.67 per month for a total of $1,075,000.20 over the five year term.  Plaintiff further seeks to recover $430,108.56 in damages to property that existed as of March 31, 2009, as well as the $59,250.00 it would have cost to repair the parking lot at that time.  Finally, plaintiff claims damages for the proration of $16,640.00 in insurance premiums and $50,236.45 in taxes.

Defendants move for partial summary judgment on multiple grounds.  First, plaintiff chose to repossess the property on April 1, 2009, thus terminating the lease on that date.  The lease did not contain an acceleration clause so plaintiff cannot recover any rent following repossession.  Second, plaintiff's agreement to sell and actual conveyance of the property to CFWMC were unequivocal acts that terminated the lease in October or November of 2009.  Defendants surrendered the property and through these unequivocal acts plaintiff accepted the surrender.  Finally, defendants assert that plaintiff did not give them the opportunity to exercise the right of first refusal and the loss of this right bars any claim for damages in excess of the property's fair market value on the date of the conveyance.

Plaintiff counters that a "repossession" excluding defendants from the premises did not occur.  Rather, plaintiff's reentry was to protect the property from further neglect while attempts were made to return defendants to their tenancy.  Plaintiff concedes there is no acceleration clause but argues that it is entitled to collect rent "as it becomes due."  Furthermore, defendants'

6

conduct did not satisfy the requirements for surrender as that term is used in the lease and plaintiff never had the intent to accept a surrender in any event. Defendants' attempt to rely on the right of first refusal is either a compulsory counterclaim or an affirmative defense that was not pled and thus the right has been waived. Finally, plaintiff asserts Omnicare (the last assignee under the lease) had no knowledge that it possessed a right of first refusal and the record does not contain any evidence that it would have exercised any such right at the time of the conveyance.

Under Pennsylvania law a commercial landlord's ability to recover for rent after a material breach is governed by historical developments in both contract and property law. Stonehedge Square Ltd. P'ship v. Movie Merchants, Inc., 715 A.2d 1082, 1083-84 (Pa. 1998). As a general matter a commercial landlord must make an election between (1) repossession with the recovery of actual damages to date or (2) the recovery of future rent. Finkle v. Gulf & Western Mfg. Co., 744 F.2d 1015, 1021 (3d Cir. 1984) (citing H.A. Steen Indus., Inc. v. Richer Communications, Inc., 314 A.2d 319, 321-22 (Pa. Super. 1973). In such a setting a landlord can recover future rent that has not yet become due only if the lease contains an acceleration clause providing for such a remedy. Otherwise, the landlord only can recover rent as it becomes due. Pierce v. Hoffstot, 236 A.2d 828, 830 (Pa. Super. 1967).

The recovery of rent under an acceleration clause requires the landlord to remain out of possession and permit the tenant to return to the leasehold during the period for which rent is recovered. Id. ("The tenant, then, does not forfeit [a]ll of his rights when the landlord accelerates, but must thereafter be accorded his possessory rights on payment of the accelerated rent."); accord Markein-Chalmers-Ludington v. Mead, 14 A.2d 152, 154 (Pa. Super. 1940) ("... this appellee, having elected to terminate the lease and recover possession of the premises, cannot, as attempted here, also enter and enforce a judgment for rent for the balance of the term.

He can confess a judgment for future rent accruing under the acceleration clause, or a judgment in ejectment, but not both.") (citations omitted). Otherwise, the landlord can accelerate the rent where the lease so provides but must credit the tenant with the amount of rent gained by the landlord's re-letting the premises to a replacement tenant. See H. A. Steen Indus., Inc. v. Richer Communications, Inc., 314 A.2d 319, 322 (Pa. Super. 1973). Possession likewise must be made available to the breaching tenant during any period the landlord seeks to recover rent as it becomes due. Onal v. BP Amoco Corp., 275 F. Supp.2d 650, 668 (E.D. Pa. 2003) (citing Pierce, 236 A.2d at 830), aff'd, 134 F. App'x. 515 (3d Cir. 2005).

The above rules prevent a non-breaching landlord from obtaining the "double recapture" that would result from a rule permitting the landlord to repossess the property, and reap a profit from renting or selling it, while at the same time collecting rent from the breaching tenant. Id. (citing Finkle v. Gulf & Western Mfg. Co., 744 F.2d 1022–23 (3d Cir.1984)).

Here, the lease did not contain an acceleration clause. Thus, plaintiff can collect for lost rent only as it became/becomes due and if it has not elected the alternative remedy of repossession and damages as of the date thereof.

A surrender occurs "when the tenant voluntarily gives up possession of the premises prior to the full term of the lease and the landlord accepts possession with intent that the lease be terminated." Onal, 275 F. Supp.2d at 668 (citing Black's Law Dictionary, 1444 (6th ed. 1990)). An act of surrender has the effect of relieving the tenant's obligation to pay rent during the unexpired term of the lease only if the landlord accepts the surrender. Stonehedge Square Ltd. P'ship v. Movie Merchants, Inc., 685 A.2d 1019, 1023 (Pa. Super. 1996).

An abandonment of possession by the lessee can be accepted by the lessor either expressly, such as by written or by oral statements, or impliedly by actions which are

inconsistent with the continuation of the tenant's rights in the leased premises. Onal, 275 F. Supp.2d at 669 (citing In re Hoffman's Estate, 1969 WL 7687, 47 Pa. D. & C.2d 32, 33 (Phil. Com. Pl. 1969)). Actions by the landlord that are only necessary to and taken for the protection of the property during the tenant's absence do not in themselves establish that an acceptance has occurred. Stonehedge, 685 A.2d at 1023.

As a general matter the acceptance of a surrender is a contractual act that occurs only through the consent of both parties. Ralph v. Deiley, 141 A. 640, 642 (Pa. 1928). Such assent can be established through either an express agreement or an unequivocal act of the parties implying that they have agreed to effectuate a surrender and acceptance. Id. (citing Felker v. Richardson, 32 A. 830, 831 (N.H. 1894)).

An acceptance also can be established "by implication of law." Id. To show such an implicit acceptance, there must be evidence of acts so inconsistent with the terms of the lease that the landlord and tenant relationship can no longer be said to exist in a manner that would permit enforcement of the rights and duties under the lease. Id.; accord Clark v. Wright, 166 A. 775, 777-78 (Pa. 1933) (An unequivocal act occurs when a landlord "acts so inconsistent with the terms of the first lease that the relation of landlord and tenant, established by the reletting, could not be enforced under the terms of the first lease."). A presumption arises that a surrender and acceptance have occurred when a tenant relinquishes possession and the landlord leases the property to a second, and separate, tenant under materially different terms or conditions. Ralph, 141 A. at 642. If this presumption is not rebutted then the landlord is estopped from asserting any right under the initial lease. Clark, 166 A. at 778 (citing Jenkins v. Root, 112 A. 153, 154 (Pa. 1920).

The burden of showing an acceptance is on the lessee. Ralph, 141 A. at 642 (citing Auer v. Penn, 99 Pa. 370 (1882)). The issue primarily is a question of the landlord's intention. Id. Whether an acceptance has occurred usually is a question of fact for the jury, "but the evidence may be such as to make it one of law for the courts." Id.

Defendants' contention that as a matter of law plaintiff accepted a surrender on April 1, 2009, and thus terminated their exposure for any accruing rent thereafter is unavailing. In determining whether plaintiff's reentry at that time was an action so inconsistent with the terms of the lease that it constituted an acceptance of surrender, plaintiff's actions must be evaluated in the light most favorable to it and in conjunction with the actions a landlord presumably would take to protect the property after an attempted surrender. Defendants abandoned the premises prior to April 1, 2009 and failed to return the keys to plaintiff. Plaintiff reentered the property on this date to turn off the HVAC system and had to replace the exterior locks to gain entry. There were a number of communications between the parties' agents in an attempt to return possession to defendants and have them resume rental payments. The record does not unequivocally demonstrate that defendant could no longer be restored to their possessory interest. In short, whether plaintiff's actions following the April 1, 2009, reentry were so inconsistent with the tenancy as to constitute an acceptance of a surrender is a genuine issue of material fact for a jury to determine.

In contrast, plaintiff's actual conveyance of the property to CFWMC was an acceptance that terminated the lease as a matter of law on November 16, 2009. The act of conveyance was an unequivocal act that was sufficiently inconsistent with the continuation of defendants' rights in the leased premises. After that date defendants could no longer re-enter the property, resume possession and pay rent. The parties could no longer enforce prospectively the terms of the lease

against each other with regard to the occupancy and use of the property. In other words, plaintiff's relinquishment of ownership clearly and convincingly was so "adverse to a reoccupation of [the property] by [the tenant] and [to] a renewal of the relations created by the lease" that the relationship could no longer exist. Stonehedge, 685 A.2d at 1023 (quoting Kahn v. Bancamerica-Blair Corp., 193 A. 905, 907 (Pa. 1937)).

Moreover, the conveyance on November 16, 2009, extinguished defendants' obligation to pay rent as of that date. As a matter of law plaintiff could not restore defendants to a possessory interest in the property on or after that date. Consequently, plaintiff could no longer demand any deficiency in rent as of that date and for any time thereafter remaining on the renewed lease, should the finder of fact conclude that such a lease was in existence.[1]

It follows that a material issue of fact remains as to whether a surrender and acceptance occurred on or after April 1, 2009, and before November 16, 2009. The finder of fact's resolution of this factual dispute will in turn resolve the question of whether plaintiff can obtain a judgment for deficient rent during these 30 weeks.[2]

Defendants' contention that plaintiff's failure to offer defendants the right of first refusal before conveying the property bars recovering any damages is misplaced. Defendants assert that in the event that they are found to have failed to effectuate timely notice of termination, then they had the right of first refusal, plaintiff failed to honor that right before the conveyance, exercise of the right on defendants' behalf would have resulted in plaintiff selling the property for its fair market value, plaintiff received fair market value for the property as a result of the tax benefits

---

[1] The same is true for the proration of taxes and insurance.
[2] Similarly, whether defendants breached the lease by failing to return property "in good, tenantable condition, broom clean except for damages caused by ordinary wear and tear" and, if so, what amount of any needed repairs were the responsibility of defendants under the lease are questions of fact for the jury to decide.

11

claimed from the conveyance and as a result plaintiff cannot recover damages. In response, plaintiff contends that (1) defendants have not established that they (and in particular Omnicare) had a contractual or other legal basis from which to claim the right, (2) the appraised value of the property following defendant's failure to maintain and repair it in violation of the lease does not erect a bar to recovering for that breach and resulting damages, and (3) there is no evidence to support the proposition that defendants would have exercised the right in any event.

Material issues of fact remain as to whether defendants can invoke the right of first refusal. Whether plaintiff's express assignment of the lease to NCS actually preserved the right in a manner that would have permitted Omnicare to exercise it sufficiently is disputed and thus is a question for the jury to decide. Plaintiff aptly notes that there is no formal contractual agreement between it and Omnicare and Omnicare has denied any responsibility for or under the lease. Furthermore, while the record will support the assignment of the lease and thus the transfer of the right to NCS, NCS has denied that it is a viable entity that remains responsible for any duties or obligations under the lease and defendants have failed to advance any instrument or agreement that purports to assign the rights under the lease from NCS to Omnicare. Whether Omnicare obtained the right to invoke the provisions of the lease to its benefit through assignment or operation of the business in a manner that vested it with those rights in accordance with the terms of the lease is a question that cannot be resolved on the current record.

Moreover, any purported ability of Omnicare to invoke the right to shield itself from liability would be coterminous with the duration of the lease and material issues remain as to when defendants relinquished or abandoned their interests therein. An option to purchase incorporated into a lease is treated as an independent clause that is governed strictly by its terms. Signor v. Keystone Consistory, A.A.S.R., Scranton, Pa., 121 A. 320, 321 (Pa. 1923). Renewal or

extension of the demise does not modify the parties' chosen terms unless the parties expressly agree to do so. Id.

Here, the relevant portion of the lease states: "Landlord shall not, *during the term of this lease*, sell or otherwise dispose of any property constituting all or part of the Entire Premise to anyone other than Tenant until (i) Landlord notifies Tenant of the terms and conditions of any offer to transfer ownership of the Entire Premise, and (ii) Tenant, within 60 days after receiving such notification, fails to enter into a binding agreement to purchase the Entire Premise upon the same terms and conditions contained in such offer." Lease Agreement (Doc. No. 4-3) at 5 (emphasis added). The first extension and the assignment did not expressly change these terms. Thus, the existence of the right of first refusal expressly was limited to the duration of the lease.

As explained above, the determination of when the lease was terminated is a question of fact for the jury to decide. If timely notice of termination was given, then the right of first refusal ended on April 1, 2009. If a surrender was accepted on any date from April 1, 2009, to November 15, 2009, then the right of first refusal ended as of that date and defendants would not have been entitled to notice and an opportunity to exercise the right thereafter. In other words, defendants must prove that the lease was still in effect when the property was conveyed in order to avail themselves of any claimed damages from the failure to receive notice and an opportunity to exercise the right of first refusal.

Moreover, even if the jury were to find that surrender and acceptance did not occur until the conveyance on November 16, 2009, defendants would still have to prove actual harm as a result of the breach of the right of first refusal. In other words, they must convince the trier of fact that (1) the lease was still in existence on November 16, 2009, (2) an entity capable of exercising the rights had lawfully assumed the rights and obligations of the lease, (3) that entity

13

did not receive notice of the pending sale; (4) that entity would have timely exercised the right under the lease; and (5) that entity was deprived of earnings or profits that were caused by the failure to receive timely notice. See Boyd & Mahoney v. Chevron U.S.A., 614 A.2d 1191, 1197 n.2 (Pa. Super. Ct. 1992) (outlining measures of damages available under various circumstances for breach of the right of first refusal, including the loss of profits from the wrongful deprivation).[3]

For the reasons set forth above, defendant's motion for summary judgment will be granted in part and denied in part. The motion will be granted to the extent plaintiff seeks to recover for unpaid rent and prorated taxes and insurance accruing after November 16, 2009. The motion will be denied in all other aspects.

Date: May 23, 2014

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    John H. Williams, Esquire
       Howard Scher, Esquire
       William R. Caroselli, Esquire
       Susan A. Meredith, Esquire

       (*Via CM/ECF Electronic Mail*)

---

[3] Defendants' contention that the purported inability to exercise the right of first refusal results in a bar to plaintiff's recovery for damages to the condition of premises is specious. Defendants reason that they could have purchased the property for the amount paid by CFWMC, plaintiff received the equivalent of fair market value for the property at the time of the conveyance through tax deductions and thus any claimed amount beyond that would be an inappropriate double recovery. Of course, defendants fail to reference any precedential authority or provision in the lease to support this sophistry. And the court is unaware of any theory of contract or property law that permits a party to avoid liability for past damage to property arising from a breach of a lease based on the value received from the conveyance of that property in its damaged condition.